# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3316

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| LeAnne Soperla, also | * | |
| known as LeAnne Wheeler, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: June 13, 2007
Filed: July 27, 2007 (**Corrected 10/19/07**)

_____

Before LOKEN, Chief Judge, and ARNOLD and COLLOTON, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Pursuant to a written plea agreement, LeAnne Soperla pleaded guilty to being an unlawful drug user in possession of a firearm, *see* 18 U.S.C. §§ 922(g)(3), 924(a)(2), to maintaining a residence for the purpose of distributing methamphetamine, *see* 21 U.S.C. § 856(a)(1), (b), and to a criminal forfeiture count, *see* 21 U.S.C. § 853. In exchange for her guilty pleas, the government agreed to dismiss a count charging Ms. Soperla with conspiracy to distribute methamphetamine, *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846. The district court sentenced her to four years of probation, and the government appeals, arguing that the sentence is unreasonable. We vacate Ms. Soperla's sentence and remand for resentencing.

## I.

Ms. Soperla owned a residence in Cameron, Missouri, in which she lived with her two sons and her ex-husband. In response to numerous complaints about the involvement of Ms. Soperla's sons in drug dealing, the Cameron Police Department initiated an investigation. During the investigation, an undercover agent made several purchases of methamphetamine, marijuana, and firearms from Ms. Soperla's sons at the family's residence. These purchases included 50.85 grams of methamphetamine and 256.29 grams of marijuana.

A search warrant was then obtained and a search conducted of the residence. The search revealed a small amount of methamphetamine and marijuana in the house. During the search, Ms. Soperla informed the police of a revolver that she kept unloaded and locked in a chest in her bedroom and that she reportedly had never fired.

In her police interview after the search, Ms. Soperla (who was in her mid-forties at the time) admitted that she had used marijuana since the age of twenty-four, that she had also used methamphetamine but that marijuana was her drug of choice, and that she had smoked marijuana every night since she was in her thirties. Ms. Soperla also acknowledged that she would periodically walk through the house and discard any drugs or paraphernalia that she found in plain view, but that she would keep and smoke any marijuana that she found. The presentence investigation report also said that Ms. Soperla was in the residence during some of the undercover drug purchases and that she had knowledge of the drug trafficking transactions, a statement to which Ms. Soperla did not object.

At the sentencing hearing, the district court calculated an advisory sentencing guidelines range for Ms. Soperla of 33 to 41 months, based on an adjusted offense level of 20 and a criminal history category of I. The court heard testimony on Ms. Soperla's behalf from her pastor, her sister, a former colleague, and her ex-husband. The district court then sentenced Ms. Soperla to four years of probation on

the firearm possession and the maintaining-a-residence counts to run concurrently. The sentence included a requirement that Ms. Soperla spend four months in a halfway house and three months in home confinement.

## II.

The government argues that Ms. Soperla's sentence is unreasonable. We review a "district court's decision to vary from the advisory sentencing Guidelines range ... for reasonableness, which is a similar standard to the abuse of discretion standard." *United States v. Pepper*, 486 F.3d 408, 411 (8th Cir. 2007). A sentence that varies from the advisory guidelines range is reasonable "so long as the judge offers appropriate justifications under the factors in [18 U.S.C.] § 3553(a)." *United States v. Gonzalez-Alvarado*, 477 F.3d 648, 650 (8th Cir. 2007). But a "sentencing court abuses its discretion if it fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors." *United States v. Long Soldier*, 431 F.3d 1120, 1123 (8th Cir. 2005). "The further the district court varies from the presumptively reasonable guideline range, the more compelling the justification based on the § 3553(a) factors must be." *United States v. Bryant*, 446 F.3d 1317, 1319 (8th Cir. 2006). We hold that the district court committed a clear error of judgment by sentencing Ms. Soperla to probation.

In sentencing Ms. Soperla, the district court invoked the requirement in § 3553(a) that the court impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection"; those purposes are "the need for the sentence imposed ... to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment" and general and specific deterrence, and to provide the defendant with needed correctional treatment. 18 U.S.C. § 3553(a)(2). Section 3553(a) also directs the sentencing court to consider

the nature and circumstances of the offense and the history and characteristics of the defendant, and to avoid unwarranted sentencing disparities. *Id.*

The district court addressed the purposes set out in § 3553(a)(2) by first stating that Ms. Soperla's offense was "very serious" but that her role as compared to that of others involved was minimal. In considering its obligation to promote respect for the law, the court concluded that although Ms. Soperla's conduct could not be excused based on her mental illness and drug addiction, just punishment would be provided without sentencing her to 33 months in prison. Specifically, the court found that Ms. Soperla had lost her job and her house because of her criminal conduct, that she will always be a convicted felon and will not be allowed to vote again, that her freedom would be restricted for the seven months that she was sentenced to serve in a halfway house and home confinement and also during the entire term of her probation (during which time she would be required to undergo frequent drug testing with the threat of returning to jail), and that she had been publicly shamed in her community. The district court opined that requiring Ms. Soperla also to spend 33 months in prison would not further deter her or others from criminal conduct.

With respect to protecting the public from further crimes of Ms. Soperla, the district court found that Ms. Soperla's criminal conduct was primarily a result of mental illness and drug addiction, which would benefit from the treatment and training available to her on probation. It further noted that Ms. Soperla's criminal conduct was primarily related to the conduct of her family members, and that she would be unlikely to re-offend given that both of her sons would be incarcerated for fifteen years.

In its consideration of the nature and circumstances of the offense, the district court again stated that Ms. Soperla's role was minimal, and it found that her conduct was a "far cry" from that of other defendants who could be convicted of maintaining a residence for purposes of drug distribution. The court placed significant weight on the fact that Ms. Soperla would have had to eject her family members from the home

in order to avoid criminal culpability, opining that "there is a vast difference between inviting people into your home for profit to use methamphetamine and failing to eject family members." The district court expressed its doubt that Ms. Soperla's conviction for being a drug user in possession of a firearm justified a prison sentence in the present case, since Ms. Soperla had not seen the gun for twenty years and she never used it, it was not associated with the underlying criminal activity, it was locked away, and it was recovered during the police search of her home only because Ms. Soperla voluntarily revealed its presence.

The district court also pointed to Ms. Soperla's history and characteristics as favoring a sentence of probation. It noted that Ms. Soperla's conduct was primarily a result of drug addiction and mental illness, and that she had a college education and had held a stable job for eighteen years.

Finally, the district court considered the need to avoid unwarranted sentencing disparities. The district court noted its belief that, with respect to the maintaining-a-residence charge, the statute covers a wide range of conduct, and that not everyone convicted of this offense deserved the same punishment, even though defendants in Ms. Soperla's circumstances should receive a sentence similar to hers. The district court reiterated its belief that, as compared with others who could be convicted under the same statutes, Ms. Soperla's conduct was relatively less culpable.

The government argues that Ms. Soperla's sentence of probation was unreasonable because it was not supported by extraordinary circumstances, because the district court minimized the seriousness of her offenses, and because the district court improperly based its variance from the advisory guidelines range on considerations already taken into account by the guidelines.

We begin our review of this sentence with the observation that the district court's sentence represents a twelve-level reduction under the guidelines and

essentially a one hundred percent downward variance from the low end of the advisory guidelines range since it allowed Ms. Soperla to avoid prison time completely. "We have suggested that a variance to zero prison time where the Sentencing Commission has found that substantial prison time is indicated ... requires extraordinary justification." *United States v. McDonald*, 461 F.3d 948, 957 n.7 (8th Cir. 2006) (citing *United States v. Gall*, 446 F.3d 884, 889 (8th Cir. 2006), *cert. granted*, No.06-7949, 2007 WL 1660978 (U.S. June 11, 2007)), *petition for cert. filed*, No. 06-8086 (U.S. Nov. 28, 2006).

We have routinely rejected this kind of variance as unreasonable. *See, e.g.*, *United States v. Likens*, 464 F.3d 823, 825-26 (8th Cir. 2006) (reversing sentence of probation where advisory guidelines range was 15 to 21 months' imprisonment); *United States v. Robinson*, 454 F.3d 839, 841 (8th Cir. 2006) (reversing sentence of probation where advisory guidelines range was 63 to 78 months' imprisonment); *United States v. Medearis*, 451 F.3d 918, 919-20 (8th Cir. 2006) (reversing sentence of probation where advisory guidelines range was 46 to 57 months' imprisonment); *Gall*, 446 F.3d at 886, 889-90 (reversing sentence of probation where advisory guidelines range was 30 to 37 months' imprisonment); *United States v. Givens*, 443 F.3d 642, 643 (8th Cir. 2006) (reversing sentence of "time served" followed by "supervised release" where defendant had, in fact, served no time, and advisory guidelines range was 24 to 30 months' imprisonment); *United States v. Rogers*, 400 F.3d 640, 641-42 (8th Cir. 2005) (reversing sentence of probation where advisory guidelines range was 51 to 63 months' imprisonment), *cert. denied*, 126 S. Ct. 1020 (2006); *cf. United States v. Wadena*, 470 F.3d 735, 737-40 (8th Cir. 2006) (upholding sentence of probation for fraud conviction where advisory guidelines range was 18 to 24 months' imprisonment, and sixty-seven-year-old defendant required frequent kidney dialysis and was sole caregiver for his child, who had fetal alcohol syndrome).

As a federal statute, the sentencing guidelines, and our cases show, probation is not merely a reduced sentence, but a different type of sentence altogether. *See*

18 U.S.C. § 3561; U.S.S.G. § 5B1 (intro. comment.). "The Comprehensive Crime Control Act of 1984 makes probation a sentence in and of itself. 18 U.S.C. § 3561. Probation may be used as an alternative to incarceration, provided that the terms and conditions of probation can be fashioned so as to meet fully the statutory purposes of sentencing." U.S.S.G. § 5B1 (intro. comment.).

Under the guidelines, moreover, a sentence of probation is available only where the applicable guidelines range is in Zone A or B of the sentencing table, and it is available where the applicable range is in Zone B only if alternative conditions of confinement are also imposed. U.S.S.G. § 5B1.1. The range of sentences available in Zones A and B are zero to twelve months' imprisonment. *See* U.S.S.G. Sentencing Table. Ms. Soperla's applicable guidelines range falls within Zone D, fully ten levels above the highest level under which she could have received probation before the guidelines were rendered advisory in *United States v. Booker*, 543 U.S. 220 (2005).

Although the sentencing court is no longer bound by the sentencing guidelines, it must still consider them during sentencing. *Booker*, 543 U.S. at 259-60. Our cases considering post-*Booker* downward variances to probation, as we noted above, indicate just how extraordinary a defendant's circumstances must be to warrant a sentence that does not include prison time where the advisory guidelines range calls for it. We find no such extraordinary circumstances here.

For one thing, though the district court is perhaps correct that Ms. Soperla's conduct was not very serious when one considers the kinds of activities that could constitute violations of the relevant statutes, it remains true that her conduct was criminal under those statutes. And, as the government points out, the guidelines already accounted for an aspect of the drug crime that led the district court to impose probation in this case: When Ms. Soperla's advisory guidelines sentencing range was calculated, she received a four-level reduction under U.S.S.G. § 2D1.8(a)(2) because she was not a participant in the underlying drug offenses, but merely allowed her

house to be used for drug trafficking. Because these circumstances significantly decreased Ms. Soperla's guidelines sentence, we believe that the district court gave too much weight to her having had only a "minimal" role in the crime when sentencing her to probation. *See United States v. Plaza*, 471 F.3d 876, 879 (8th Cir. 2006). We also note that the district court could have, but did not, consider the fact that Ms. Soperla received a substantial benefit when the government agreed to drop the conspiracy charge against her, a charge that carried a mandatory minimum sentence of ten years. *See United States v. Jimenez-Gutierrez*, No. 06-1566, 2007 WL 1855644, at *4 (8th Cir. June 29, 2007).

The district court also downplayed the seriousness of Ms. Soperla's offense by positing that the only way that Ms. Soperla could avoid criminal culpability was to "eject" her sons and ex-husband from the home. But this was not the only option available to her. She could have asked them to stop their criminal activities. She could have threatened to call the police if they did not stop, and indeed she could have actually called the police if they continued their activities. There was some evidence, moreover, that Ms. Soperla had forced her family members to leave the home before, in which case she had every reason to believe that she could ask them to leave again.

We believe that the district court's imposition of a sentence of probation in this case also fails to give appropriate weight to other statutory sentencing goals, namely, the need to promote respect for the law, the need to deter others from committing similar crimes, and the statutory goal of avoiding unwarranted sentencing disparities.

The last consideration is of particular concern here. We have already held at least three times that a downward variance to probation is unreasonable where the defendant pleaded guilty to possession of a firearm in violation of 18 U.S.C. § 922(g). *See Likens*, 464 F.3d at 825-26; *Medearis*, 451 F.3d at 919, 921; *United States v. Robinson*, 454 F.3d 839, 843 (8th Cir. 2006). In *Likens*, where the defendant was convicted of being a drug user and a felon in possession of a firearm, we specifically

noted that Congress "has clearly expressed its view regarding the seriousness of [these] offenses." Even if these cases are not binding in the present circumstances due to factual distinctions, they tend to indicate that sentences of probation are generally disfavored for crimes as serious as Ms. Soperla's.

Although it may be that a sentence of less than 33 months' imprisonment is warranted based on Ms. Soperla's unique circumstances, we believe that a sentence of probation is unreasonable in this case. Accordingly, we vacate the sentence imposed by the district court and remand for resentencing.

_____